UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:12-cv-217-RJC

| TERRANCE BELL, | ) |
|---|---|
| Plaintiff, | ) |
| vs. | ) ORDER |
| SAMI HASSAN, | ) |
| Defendant. | ) |

**THIS MATTER** comes before the Court on Defendant's Motion for Summary Judgment, (Doc. No. 46), and Plaintiff's Motion to Appoint Counsel, (Doc. No. 51).

## I. BACKGROUND

A. <u>Procedural Background</u>

Pro se Plaintiff Terrance Bell is a North Carolina state court inmate currently incarcerated at Alexander Correctional Institution, after having been convicted of robbery with a dangerous weapon in Wayne County on February 5, 2004. On April 5, 2012, Plaintiff filed this action under 42 U.S.C. § 1983, naming Dr. Sami Hassan as the sole Defendant. Dr. Hassan was at all relevant times the prison doctor for Lanesboro.[1] Plaintiff contends that while he was incarcerated at Lanesboro Defendant Hassan was deliberately indifferent to his serious medical

---

[1] Dr. Hassan is a medical doctor, with a full and unrestricted license issued by the North Carolina Medical Board. (Doc. No. 46-1 at ¶ 1). Dr. Hassan is a Division of Adult Correction ("DAC") contracted physician who has provided professional medical care to inmates in DAC custody for over ten years, including to inmates in custody at Lanesboro since approximately 2010. (<u>Id.</u> at ¶ 3).

1

needs by denying Plaintiff "proper medication and medical treatment" for a shoulder injury that allegedly occurred on July 8, 2011. Plaintiff seeks injunctive relief and compensatory damages.

On November 22, 2013, Defendant filed the pending summary judgment motion. (Doc. No. 46). On December 4, 2013, this Court entered an order in accordance with <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the motion for summary judgment and of the manner in which evidence could be submitted to the Court. (Doc. No. 48). Plaintiff filed his response on December 20, 2013. (Doc. No. 49). Defendant filed a reply to Plaintiff's response on January 1, 2014. (Doc. No. 50).

B.    <u>Factual Background</u>

1.    Plaintiff's Allegations

Plaintiff alleges that on July 8, 2011, he slipped and fell at Lanesboro and struck his right shoulder on the floor. (Doc. No. 1 at 5). Plaintiff alleges he has been denied "proper medication and medical treatment for [his] injuries." (Id. at 2). Plaintiff alleges that Dr. Hassan "is refusing to provide Plaintiff with the proper medication to treat his injuries." (<u>Id.</u> at 5). Plaintiff does not allege what would constitute "proper medication" to treat his alleged injuries. (<u>Id.</u>). Plaintiff alleges that he informed Dr. Hassan that the pain medication regimen Dr. Hassan prescribed was not effective in eliminating his pain. (<u>Id.</u>). Plaintiff alleges that during Dr. Hassan's February 8, 2012, examination of Plaintiff, Dr. Hassan did not see anything wrong, but that Dr. Hassan nevertheless continued the pain medication (Naproxen a/k/a Narposyn 500 mg tab) that Plaintiff was already taking pursuant to Dr. Hassan's prior pain medication order. (<u>Id.</u> at 6). Plaintiff seeks injunctive relief in the form of a court order requiring Dr. Hassan to provide Plaintiff with "proper medication" and "an extra mattress and pillow to help him sleep at night." (<u>Id.</u> at 4). Plaintiff also seeks a court order requiring Dr. Hassan to write a medical order for him to be

2

handcuffed in the front of his body.[2] (Id.). Finally, Plaintiff seeks compensatory damages from Dr. Hassan in the amount of $550,000 and punitive damages from Dr. Hassan also in the amount of $550,000. (Id.).

    2.      The Parties' Summary Judgment Materials

Doctor Hassan has submitted his own affidavit as well as Plaintiff's medical records in support of his summary judgment motion. Plaintiff submitted his own affidavit in response to the summary judgment motion, and Dr. Hassan filed a Reply.

Dr. Hassan's records show that on Friday, July 8, 2011, at 11:25 p.m., a DAC nurse notified certified Physician Assistant Mr. Labore about Plaintiff's accident involving his shoulder. (Doc. No. 46-1 at ¶ 7; BS 118, 143). Labore ordered Plaintiff sent to the emergency room of a local hospital for evaluation. (Id.). Labore was the on-call health care provider for Lanesboro on July 8, 2011. (Id.). On July 9, 2011, at 12:53 a.m., Plaintiff arrived at the emergency room of CMC-Union Hospital. (Id. at ¶ 9; BS 175). On July 9, 2011, at 1:15 a.m., the hospital performed X-rays of Plaintiff's right shoulder, which were normal and showed normal alignment and no fractures. (Id. at ¶ 10; BS 179). On July 9, 2011, the hospital emergency room physician diagnosed Plaintiff as having a right shoulder contusion, i.e., a bruise. (Id. at ¶¶ 11, 12; BS 181). Dr. Hassan states in his affidavit that bruises typically resolve quickly and require little, if any, medical intervention. (Id.). The hospital emergency room physician prescribed Plaintiff Percocet 5/325 pain medication, one to two tablets every four to six hours, for five days, with no refills. (Id. at ¶ 13; BS 180). The hospital emergency room physician specifically noted that substitute pain medication (i.e., pain medication other than Percocet

---

[2] Defendant notes that Plaintiff's requests for injunctive relief are moot because he has been transferred away from Lanesboro. Defendant further states that on September 19, 2012, Dr. Hassan ordered Plaintiff to be handcuffed in the front of his body. (Doc. No. 46-1 at ¶ 58).

5/325) was permitted. (Id.).

On Saturday, July 9, 2011, at 3:15 a.m., Plaintiff returned to Lanesboro after having been discharged from CMC-Union Hospital. (Id. at ¶ 15; BS 143; 176). At that time, Plaintiff's DAC medical chart was placed on the MD list (doctor's list) for review. (Id. at ¶ 15; BS 143). Dr. Hassan was not at Lanesboro at the time of Plaintiff's alleged accident on Friday, July 8, 2011. (Id. at ¶ 16). Dr. Hassan was also not at Lanesboro on Saturday, July 9, 2011, as Labore was the on-call medical provider on Saturday, July 9, 2011. On July 9, 2011, at 7:55 a.m., Labore was notified of Plaintiff's condition and the hospital emergency room physician's prescription of Percocet 5/325 tablets every 4 to 6 hours for five days, with no refills, which the hospital emergency room physician specifically noted could be substituted with different pain medication (i.e., pain medication other than Percocet 5/325). (Id. at ¶ 17; BS 143, 180). On July 9, 2011, at 7:55 a.m., Labore gave a telephone order to substitute pain medication for Plaintiff. (Id. at ¶ 18; BS 118). Specifically, Labore ordered that Plaintiff receive Ibuprofen pain reliever, 800 mg, three times per day for five days. (Id.).

Monday, July 11, 2011, was the first time Dr. Hassan was onsite at Lanesboro following Plaintiff's alleged accident on Friday, July 8, 2011. (Id. at ¶ 19). On Monday, July 11, 2011, Dr. Hassan reviewed the pertinent portions of the DAC medical chart pertaining to Plaintiff, including the hospital emergency room physician's prescription of Percocet 5/325 tablets every 4 to 6 hours for Plaintiff for five days with no refills and Labore's order substituting pain medication for Plaintiff, as expressly permitted by the hospital emergency room physician. (Id. at ¶ 20; BS 118, 180).

On July 11, 2011, an ice pack was provided to Plaintiff due to his complaints of shoulder pain arising from his shoulder bruise. (Id. at ¶ 21; BS 143). Based on Dr. Hassan's July 11,

4

2011, review of the pertinent portions of the DAC medical chart pertaining to Plaintiff, it was Dr. Hassan's professional medical judgment that Plaintiff did not need to undergo a physical examination of his right shoulder on July 11, 2011, particularly since Plaintiff had been diagnosed with only a bruise; his X-rays were normal with no fractures; and he was already taking pain medication for his bruise. (Id. at ¶ 22).

On July 20, 2011, at 9:25 a.m., Plaintiff was seen by a DAC nurse during a sick call appointment. (Id. at ¶ 23; BS 85). At that time, Plaintiff complained of right shoulder pain. (Id.). Range of motion in Plaintiff's shoulder was noted to be 80%. (Id.). Plaintiff's right shoulder showed no swelling, and his pulses were even and strong, with capillary refill within normal limits. (Id.). The DAC nurse determined that Plaintiff's condition was non-urgent. (Id.). The DAC nurse did not refer Plaintiff to Dr. Hassan or otherwise put Plaintiff down on the MD list to see Dr. Hassan. (Id.). The DAC nurse instructed Plaintiff to return to the clinic on an as-needed basis. (Id.). Per DAC nursing protocol, the DAC nurse ordered that Plaintiff receive Ibuprofen pain reliever, 200 mg, two tablets three times per day for five days. (Id.). Per the DAC nurse's note, Plaintiff verbalized understanding of the above and agreed with the treatment plan. (Id.). Dr. Hassan was not present at, or otherwise involved with, Plaintiff's July 20, 2011, appointment with the DAC nurse. (Id. at ¶ 24). Furthermore, Dr. Hassan has never received or seen any letter from Plaintiff, including any letter regarding his health care. (Id. at ¶ 25).

On August 15, 2011, Dr. Hassan physically examined Plaintiff. (Id. at ¶ 28; BS 117). At that time, Plaintiff complained of lower back pain and right shoulder pain following his July 8, 2011, accident. (Id.). Upon physical examination, Plaintiff's back and extremities showed good range of motion and normal strength and function. (Id.). Upon physical examination, Plaintiff's shoulder showed no edema (swelling caused by excess fluid), crepitus (popping/cracking),

5

deformity, contusion (bruise), or abrasion (scrape). (Id.). Dr. Hassan ordered a copy of all of Plaintiff's records from his July 9, 2011, hospital visit, including more than the documents the hospital sent back with Plaintiff upon his return to Lanesboro after being discharged from the hospital on July 9, 2011. (Id.). Dr. Hassan assessed Plaintiff as having shoulder and low back pain. (Id. at ¶ 28; BS 116). Despite there being no objective indications of shoulder injury or back injury, on August 15, 2011, Dr. Hassan ordered that Plaintiff undergo X-rays of his right scapula and his lumbar spine and more X-rays of his right shoulder, because Plaintiff was complaining of right shoulder pain and tenderness and low back pain. (Id.). On August 15, 2011, Dr. Hassan also ordered that Plaintiff receive Naprosyn pain and anti-inflammatory medication, 500 mg, twice per day for one month. (Id.).

On August 25, 2011, pursuant to Dr. Hassan's order of August 15, 2011, Plaintiff underwent X-rays of his lumbar spine, right scapula, and right shoulder. (Id. at ¶¶ 29-31; BS 169-172). The results of Plaintiff's August 25, 2011, X-rays were normal and revealed no fractures. (Id.). Thus, as of August 25, 2011, Plaintiff had undergone two separate instances of X-rays of his right shoulder (on July 9, 2011, and August 25, 2011), and the results of all of Plaintiff's X-rays were normal. (Id. at ¶ 32). On September 1, 2011, Dr. Hassan reviewed the radiology reports of Plaintiff's August 25, 2011, X-rays, all of which were normal. (Id. at ¶ 33; BS 171-172). Dr. Hassan also reviewed the patient visit summary and the emergency department flow sheet from Plaintiff's July 9, 2011, hospital visit, which showed Plaintiff had a shoulder bruise for which he was prescribed pain medication for five days. (Id. at ¶ 33; BS 175, 177). On November 7, 2011, Dr. Hassan reviewed Plaintiff's medical chart based on Plaintiff's request for renewal of his Naprosyn pain medication, and Dr. Hassan ordered renewal of Plaintiff's Naprosyn pain medication, 500 mg twice per day, for one year. (Id. at ¶ 36; BS 115).

6

On December 28, 2011, Dr. Hassan reviewed Plaintiff's DAC medical chart for review of renewal of medications. (Id. at ¶ 39; BS 115). At that time, Dr. Hassan ordered hydrocerin skin cream twice per day for one year, and Selsun 1% shampoo (dandruff shampoo) for one year. (Id.). At that time, based on his training, education, and experience as applied to Plaintiff, it was Dr. Hassan's professional medical judgment that there was no medical necessity for front handcuffs (rather than behind his back), particularly since Plaintiff sustained a mere shoulder bruise on July 8, 2011; his bruise was previously documented as having resolved by August 15, 2011; and his multiple sets of X-rays were all normal. (Id. at ¶ 39).

On January 6, 2012, Plaintiff was seen by a DAC nurse during a sick call appointment. (Id. at ¶ 40; BS 80). The DAC nurse determined that Plaintiff was in no acute distress, had no stated trauma, and had no bruises. (Id.). Nevertheless, Plaintiff's sick call appointment request indicated that he was having pain in his shoulder, collarbone, and back, and Plaintiff requested reinstatement of his shampoo and skin cream. (Id.). The DAC nurse put Plaintiff on the MD list. (Id.). On January 11, 2012, Dr. Hassan physically examined Plaintiff pursuant to the DAC nurse's referral of Plaintiff for an MD visit. (Id. at ¶ 42; BS 112). At that time, Plaintiff was complaining of right shoulder pain. (Id.). Dr. Hassan once again reviewed Plaintiff's records from his July 9, 2011, hospital visit. (Id.). Upon physical examination, Plaintiff's shoulders showed no deformity, asymmetry, or edema. (Id.). At that time, Dr. Hassan again saw no medical necessity for front handcuffs, and he therefore did not order front handcuffs.

On February 8, 2012, Dr. Hassan physically examined Plaintiff for complaints of back pain, shoulder pain, and nasal allergies based on a DAC nurse's referral for Plaintiff to have an MD visit. (Id. at ¶ 43; BS 79, 111). Plaintiff's extremities, including his shoulders, showed good range of motion with normal strength and function. (Id.). Plaintiff's back showed good

7

range of motion with normal strength, function, and gait, and Plaintiff was able to sit and stand with no difficulty. (Id.). Once again, Plaintiff showed no objective signs of having any problems with his shoulder or back. (Id.). Plaintiff's extraocular (eye muscle) movements were intact and the sclera (the white of his eyes) was clear, but his nostrils showed redness. (Id.). Based on his physical examination of Plaintiff, it was Dr. Hassan's professional medical assessment that Plaintiff had nasal rhinitis and chronic, low back pain. (Id.). Dr. Hassan ordered Claritin for Plaintiff's nasal allergies daily for one month and continued Plaintiff's Naprosyn pain medication. (Id.).

On March 6, 2012, Plaintiff was seen by a DAC nurse during a sick call appointment, at which time Plaintiff indicated that he needed something for his stuffy nose and throat, and that he needed his Clindamycin medication reinstated. (Id. at ¶ 44; BS 78). Nothing in the DAC nurse's March 6, 2012, sick call appointment note suggests that Plaintiff complained of shoulder pain on that day. (Id. at ¶ 44; BS 78). On March 12, 2012, Dr. Hassan again saw Plaintiff. (Id. at ¶ 46; BS 109). At that time, Dr. Hassan reviewed with Plaintiff the DAC nurse's March 6, 2012, sick call appointment note. (Id.). Plaintiff made no complaints of shoulder pain on March 12, 2012, and Dr. Hassan ordered that Plaintiff receive Clindamycin and chlor-trimeton medications. (Id.).

On April 23, 2012, Dr. Hassan once again saw Plaintiff. (Id. at ¶ 49; BS 108). At that time, Dr. Hassan ordered multivitamins and renewed and extended his order for chlor-trimeton. (Id.). According to Dr. Hassan, he did not change his prior order of Naprosyn pain medication, 500 mg twice per day, for one year, because there was no objective clinical indication to do so. (Id.). All of Plaintiff's X-rays were normal; his shoulder bruise had resolved many months earlier; and physical examinations of Plaintiff showed his shoulder was normal.

8

On June 25, 2012, Dr. Hassan ordered Excedrin migraine medication, daily, as needed for one year. (Id. at ¶ 52; BS 105). Dr. Hassan also ordered that Plaintiff receive a trial of Elavil medication, 25 mg every night at bedtime, in an attempt to resolve Plaintiff's subjective complaints of pain, despite that there were no objective indications of injury or problems with Plaintiff's shoulder or back. (Id.). On September 19, 2012, Dr. Hassan physically examined Plaintiff. (Id. at ¶ 55; BS 124). At that time, Plaintiff's neck showed decreased range of motion with right trapezius tenderness. (Id.). Dr. Hassan assessed Plaintiff as having chronic neck pain and ordered an increase in Plaintiff's Elavil medication for chronic pain. (Id.).

Although there were no objective symptoms of Plaintiff having an injury or other objective problem with his neck, collar bone, or shoulder, Plaintiff continued to voice subjective complaints of pain, even while Elavil had been added to his pain medication regimen. (Id. at ¶ 55; BS 124). In an abundance of caution and in deference to Plaintiff's complaints of pain, Dr. Hassan determined that it was medically appropriate to order that DAC custodians handcuff Plaintiff in the front of his body as opposed to behind his back. (Id. at ¶ 55; BS 102).

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes

demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S.Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

## III. DISCUSSION

Claims under 42 U.S.C. § 1983 based on an alleged lack of or inappropriate medical treatment fall within the Eighth Amendment's prohibition against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To state a claim under the Eighth Amendment, a plaintiff must show a "deliberate indifference to serious medical needs" of the inmate. Id. "Deliberate indifference requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care." Young v. City of Mt. Ranier, 238 F.3d 567, 575-76 (4th Cir. 2001) (citations omitted). "To establish that a health care provider's actions constitute

deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990).

Allegations that might be sufficient to support negligence and medical malpractice claims do not, without more, rise to the level of a cognizable § 1983 claim. Estelle, 429 U.S. at 106; Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) ("Deliberate indifference is a very high standard—a showing of mere negligence will not meet it."). To be found liable under the Eighth Amendment, a prison official must know of and consciously or intentionally disregard "an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994); Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998). "[E]ven if a prison doctor is mistaken or negligent in his diagnosis or treatment, no constitutional issue is raised absent evidence of abuse, intentional mistreatment, or denial of medical attention." Stokes v. Hurdle, 393 F. Supp. 757, 762 (D. Md. 1975), aff'd, 535 F.2d 1250 (4th Cir. 1976). The constitutional right is to medical care. No right exists to the type or scope of care desired by the individual prisoner. Id. at 763. Therefore, a disagreement "between an inmate and a physician over the inmate's proper medical care [does] not state a § 1983 claim unless exceptional circumstances are alleged." Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985) (dismissing the plaintiff's § 1983 claim against a defendant physician for allegedly discharging the plaintiff too early from a medical clinic, as such claim did not rise to the level of deliberate indifference but would, "at most, constitute a claim of medical malpractice").

The Court finds that Plaintiff has not presented evidence on summary judgment to raise a genuine issue of material fact as to whether Dr. Hassan was deliberately indifferent to Plaintiff's serious medical needs. First, the Court finds that there was no objective evidence on summary

11

judgment showing that Plaintiff was suffering from a serious medical need. There is no evidence on summary judgment showing that Plaintiff was suffering from any lasting shoulder injury, or that Plaintiff was not treated for his subjective complaints of pain. The undisputed facts on summary judgment show that: (1) the hospital emergency room physician diagnosed Plaintiff as having a mere shoulder bruise, and Plaintiff specifically admits in his response to the summary judgment motion that he sustained a mere bruise; (2) Plaintiff's hospital discharge paperwork expressly permitted DAC health care providers to substitute pain medication in lieu of Percocet 5/325; (3) the X-rays of Plaintiff's shoulder taken at the hospital on July 9, 2011, were normal; (4) the follow-up X-rays that Dr. Hassan ordered for Plaintiff on August 15, 2011, were also normal; (5) all objective indications showed that Plaintiff's shoulder bruise resolved in a timely fashion; (6) Dr. Hassan's multiple physical examinations of Plaintiff showed no objective problems with Plaintiff's shoulder; (7) Dr. Hassan ordered additional and increased pain medication for Plaintiff despite there being no objective problem with Plaintiff's neck, collar bone, or shoulder; and (8) Dr. Hassan, in an abundance of caution and deference to Plaintiff's purely subjective complaints of pain, ordered that DAC custodians handcuff Plaintiff in the front of his body as opposed to behind his back.

Even if Plaintiff's 42 U.S.C. § 1983 action against Dr. Hassan were sufficient from an objective prong standpoint, it otherwise fails from a subjective prong standpoint. Plaintiff has failed to present any facts demonstrating or even plausibly suggesting Dr. Hassan's subjective state of mind to show that Dr. Hassan was deliberately indifferent to any serious need of Plaintiff. Dr. Hassan's statements in his affidavit show his own subjective state of mind while treating Plaintiff and his belief that Plaintiff was not suffering from any lasting shoulder injury. Based on Dr. Hassan's statements in his affidavit and the evidence of the lack of any lasting

shoulder injury on physical examination or on repeated X-rays, there is no evidence that Dr. Hassan drew an inference that the health care he provided to Plaintiff exposed Plaintiff to a risk of harm to Plaintiff.

Plaintiff's affidavit makes clear that his claim is based on nothing more than a disagreement with Dr. Hassan over the proper course of treatment for Plaintiff for his shoulder bruise and the pain medication regimen. For instance, Plaintiff complains about the fact that Dr. Hassan ordered X-rays rather than Magnetic Resonance Imaging for Plaintiff. Plaintiff has simply opined that Dr. Hassan should have run more tests, but Plaintiff has produced no evidence on summary judgment, in the form of qualified medical expert testimony or otherwise, to refute Dr. Hassan's professional medical opinion as to the propriety of Dr. Hassan's treatment of Plaintiff. The Constitution does not guarantee to a prisoner the treatment of his choice. Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988). Absent exceptional circumstances, "[d]isagreements between an inmate and a physician over the inmate's proper medical care" are not sufficient to raise an Eighth Amendment claim for purposes of 42 U.S.C. § 1983. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). "The courts will not intervene upon allegations of mere negligence, mistake or difference of opinion." United States v. Clawson, 650 F.3d 530, 538 (4th Cir. 2011) (quoting Bowring v. Godwin, 551 F.2d 44, 47-48 (4th Cir. 1977)). Plaintiff has simply failed to meet his burden in overcoming Defendant's summary judgment motion.

## IV. CONCLUSION

Plaintiff has failed to raise a genuine issue of material fact as to whether Defendant may be held liable for deliberate indifference to Plaintiff's serious medical needs, and Defendant is therefore entitled to summary judgment.

**IT IS, THEREFORE, ORDERED** that:

1. Defendant's Motion for Summary Judgment, (Doc. No. 46), is **GRANTED**, and this action is dismissed with prejudice.
2. Plaintiff's Motion to Appoint Counsel, (Doc. No. 51), is **DENIED** as moot.

Signed: September 9, 2014

Robert J. Conrad, Jr.
United States District Judge